IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

EUGENE SMITH,                           )
                                        )
    Defendant Below,                    )
    Appellant,                          )
                                        )    Cr. ID No. 1707018039
    v.                                  )
                                        )
STATE OF DELAWARE                       )
                                        )
    Plaintiff Below,                    )
    Appellee.                           )
                                        )

Submitted: March 18, 2019
Decided: June 28, 2019

## MEMORANDUM OPINION

*Appeal from the Court of Common Pleas.*
**AFFIRMED**

Frances S. Ratner, Esquire, Office of Defense Services, Wilmington, Delaware, for Appellant.

Jillian L. Schroeder, Esquire, Department of Justice, Wilmington, Delaware, for the Appellee.

**BUTLER, J.**

This is an appeal from the Court of Common Pleas. After a jury trial, Eugene Smith was convicted of disorderly conduct and resisting arrest. He appealed both convictions to this Court, but a previous ruling of the Court determined that the disorderly conduct conviction was not appealable. We therefore examine here only the resisting arrest conviction. Finding Smith's claims unavailing, the Court affirms the verdict and sentence imposed by the Court of Common Pleas.

## I. FACTS AND PROCEDURAL BACKGROUND

On July 24, 2017, two Wilmington Police Officers responded to a call for help in the 900 Block of West 30th Street. There was a playground with a basketball court populated by ball players and families with children. Upon arrival, officers observed a parked SUV occupied by a female passenger, with the door ajar. Mr. Smith was standing six to seven feet from the vehicle, pointing in its direction and screaming obscenities. Smith continued screaming obscenities, even as the officers approached him.

When it was apparent that Smith was arguing with his girlfriend, one officer stayed with the girlfriend and the other walked Mr. Smith away from the vehicle in an effort to deescalate the situation. Instead, Smith screamed more obscenities at the police officer accompanying him. Smith finally calmed down and provided his name to the officer, but then he refused to supply his birth date.

The officer went to his patrol car to determine Smith's birthdate. While in his patrol vehicle, Smith approached the officer in an aggressive manner. The officer exited the vehicle and told Smith to step back and place his hands behind his back. In response, Smith told the officer that the officer "couldn't handle him." The officer then attempted to handcuff Smith, resulting in a struggle to bring him under control. In the course of his resistance, Smith wound up in the passenger seat of the patrol car, at which point the officer forcibly removed him from the vehicle.

The struggle continued until the officer was on top of Smith and both of them were on the ground. Once finally handcuffed, Smith was transported to the hospital as a precautionary measure, where it was determined that he had a rib contusion.

The jury found Mr. Smith guilty of disorderly conduct and resisting arrest. The Court sentenced him to a $100 fine for disorderly conduct. For the resisting arrest count, Smith received a jail sentence, suspended for probation. Upon initial review, this Court determined that the disorderly conduct sentence to a $100 fine is not appealable.[1] Therefore, the only issues remaining available for review are certain evidentiary rulings made by the trial court relating to the resisting arrest charge.

---

[1] *Smith v. State of Delaware*, ID No. 1707018039 (Docket Entry 15), (Del. Super. Ct. Dec. 18, 2018). *See generally, Kostyshyn v. State*, 2010 WL 3398942 (Del. 2010), *Kelsch v. State*, 2016 WL 4059233 (Del. Super. Ct. 2016)

## II. ISSUES RAISED ON APPEAL

Smith argues that the trial court abused its discretion in prohibiting any testimony regarding a Use of Force Report, or the lack thereof, in association with his arrest. Smith also says the trial court unfairly restricted him in presenting evidence of bias of the arresting officer.

## III. STANDARD OF REVIEW

The standard for reviewing a ruling on the scope of cross-examination is abuse of discretion.[2] As a matter of law, a trial court's authority in respect to order of proof is broad, and appellate courts will not overturn their decisions regarding mode and order of presenting evidence unless they infringe on a constitutional right or constitute an abuse of discretion.[3]

---

[2] *Hamann v. State*, 565 A.2d 924, 928 (Del. 1989), citing *McLean v. State,* Del. Supr., 482 A.2d 101, 103 (1984)("The right of confrontation is not absolute, however. It is subject to the trial court's discretion regarding scope. D.R.E. 611. Specifically, cross-examination should be limited to matters raised in direct examination and those affecting the credibility of the witness. D.R.E. 611(b).").

[3] *Tice v. State*, 624 A.2d 399, 403 (Del. 1993)(A defendant is not entitled to determine sequence or admissibility of evidence at trial; relevance and admissibility are within the discretion of the trial judge), *citing Van Arsdall v. State*, Del. Super., 486 A.2d 1, 8–9 (1984) *vacated on other grounds*, 524 A.2d 3 (Del. 1987).

# IV. ANALYSIS

## A. *Use of Force Report*

On cross-examination of the arresting officer, Smith's counsel sought to elicit testimony concerning a "use of force report." Smith's presentation of the issue in the trial court is part of the problem on appeal, so we review it in some detail.

When defense counsel asked the officer what a use of force report is and to explain it, the State objected and a sidebar ensued. The transcript reveals the prosecutor's objection that "there is no use of force report in this case and we addressed that beforehand." When the prosecutor explained that "there wasn't one because it wasn't required in this case," Smith's attorney said she knew there was no report and the trial court thereupon ruled the matter irrelevant.[4]

Exactly why a use of force report was not required – assuming the prosecutor was correct in this regard – is not a matter of record. Perhaps the parties "addressed that beforehand," but no transcript of that discussion is available for review. Had the defense wished to preserve some other part of the record, it was up to the defense to request the transcript. The defense did not make an offer of proof or otherwise elicit any further testimony concerning the presence or absence of a use of force report.

---

[4] Trial transcript pp. 55-56.

About the most Smith can make of this issue on appeal is to urge that defense counsel could not "explore why the officers did not file a use of force report and whether they had abided by department guidelines for these reports."[5] The inability to "explore" department guidelines sounds like the complaint of an inability to go on a fishing expedition. Counsel made no proffer as to whether departmental guidelines required the filing of a report and asks us to speculate along with her. Unless a reviewing court understands that such a report was required under these circumstances and was not made, there is nothing for this Court to review. If a use of force report is not required, then its absence is irrelevant and the trial court was quite correct. If a use of force report was required, then Smith needed to make a record demonstrating that and perhaps relief would be appropriate, assuming it survived a harmless error analysis. But we need not concern ourselves here with what might have been, because it was not. Mr. Smith has provided the Court with no basis to grant him relief and the Court will not speculate its way into a reversal of the trial verdict.

### B. Excluded Testimony of Bias

Also during cross examination of the arresting officer, defense counsel sought testimony from the officer that he knew Smith from prior occasions. The officer testified that he "may have had an interaction with him once or twice, but I'm not

---

[5] Appellant's Opening Brief at 11

100% sure."[6] Defense counsel went no further with the officer concerning any prior interaction.

But during the defense case, defendant Smith took the stand and testified to what amounted to an assault by the two police officers involved. Attempting to account for this version of the event, defense counsel asked:

> Q: Now why would, let me ask this question – did you know these officers prior to this? Or did they know you? I'll ask you that question.
> A: Yes, I seen them. They came to my house
> [Prosecutor]: Objection
> A: On many a times
> Court: Sidebar

At the sidebar conference, the prosecutor objected on general relevance grounds. Defense counsel laid out that "the issue is that he's a relative of Jeremy McDole...the man in the wheelchair who was killed by police...and the police know that and they trump up charges against him. That's his point as to why they would make this up."[7]

The Court rejected defense counsel's arguments under evidence Rules 403(b) and 401.

Smith says the Court's rejection of this testimony was an undue restriction of his right to present testimony of bias by the testifying officer.

---

[6] Trial transcript, p. 57
[7] Trial transcript, p. 81-82

The Court did not intervene in the cross examination of the officer, who testified he may have seen Smith before but could not be sure. The officer *was not asked* if he knew that Smith was related to Jeremy McDole, so there is simply no testimony that he knew of such a relationship. The trial court correctly recognized that evidence of an improper bias or motive of the police could not come from the defendant, since the defendant could only speculate as to the motives or biases of the police. And while there must be some leeway to permit inferences from circumstances, the trial judge is well within his discretion to control the cross examination to prevent it from careening into an overheated contest of wild accusations having no roots in reality.

Neither was there any evidence, from any quarter, that the testifying officer was somehow involved in the McDole case. So to follow Smith's logic, Smith is immune from arrest for disorderly conduct or resisting arrest, because all Wilmington police do is lie on the witness stand against him.

If Smith wished to present evidence of some conspiracy of the Wilmington Police to "trump up" charges against him, perhaps he would make a better case for its admission. But like his arguments concerning use of force reports, his arguments are without support in the record. He produced no testimony, by offer of proof or otherwise, that this police officer had a bias against him, or knew him as a relative of McDole, or suffered a civil judgment or personnel action because of the McDole

case. There was no evidence of a department wide conspiracy or any animus toward defendant due to his relationship to Mr. McDole and the Court cannot presume such bias on his say so. Permitting Smith to espouse his personal view without support properly belongs in the category of misleading, non-probative evidence that invites the jury to render its verdict on something other than the merits of the evidence.

If Smith was targeted for arrest because he was McDole's uncle, and not because he was acting inappropriately in a public park and then challenging police officers who were doing their job, then evidence of his being targeted should have been produced. But "evidence" is not the pure conjecture and wild speculation of the accused. Beyond that, the defense had nothing. The trial judge was well within his discretion to curtail the testimony.

## V. CONCLUSION

For the reasons set forth herein, Defendant's conviction for resisting arrest is **AFFIRMED**.

**IT IS SO ORDERED.**

Judge Charles E. Butler

8